**ALTON INDEPENDENT SCHOOL DIST. et al. v. CENTRAL EDUCATION AGENCY et al.**

No. 10113.

Court of Civil Appeals of Texas. Austin.

May 27, 1953.

Rehearing Denied June 24, 1953.

Ewers, Cox & Toothaker, by William E. York, McAllen, Dan Moody, Austin, for appellants.

John Ben Shepperd, Atty. Gen., Mary Kate Wall, Asst. Atty. Gen., for appellees.

ARCHER, Chief Justice.

This suit was brought by Alton Independent School District and some twenty-four other school districts of Cameron and Hidalgo Counties, Texas, constituting all of the school districts in those two counties, and taxpaying citizens of various of said districts, as plaintiffs, against Central Education Agency (established by Article 2654-1, Vernon's Civil Statutes, section 1, Article I, Chapter 299, Acts of the 51st Legislature), the State Board of Education (established by Article 2654-2, Vernon's Civil Statutes, section 1, Article II, Chapter 299, Acts of the 51st Legislature), the State Commissioner of Education (the office having been established by Article 2654-5, Vernon's Civil Statutes, section 1, Article V, Chapter 299, Acts of the 51st Legislature) and the members of the State Board of Education, as defendants.

The suit was instituted as an appeal from the action of the State Board of Education in adopting the economic indexes of Cameron and Hidalgo Counties on March 5, 1951, and from the refusal thereafter of the State Board of Education to adjust the economic indexes of said two counties in the light of the economic disaster suffered by said two counties as the result of an unprecedented freeze in the latter part of January, 1951.

Appellants alleged the fact of the freeze and its devastating effect upon Cameron and Hidalgo Counties; that such condition was brought to the attention of the Board of Education before any action was taken by the Board to adopt said indexes as submit-

ted by the Commissioner of Education, and that the Board refused to make an adjustment of the indexes of said two counties in the light of facts concerning the damaging effect of said freeze upon the economy of Cameron and Hidalgo Counties, including the destruction of some ninety per cent of the citrus groves of Cameron and Hidalgo Counties.

Appellants also alleged that there was a justiciable controversy between appellants and appellees involving the right of appellants to an adjustment of the economic indexes of said two counties, and involving the validity of the Foundation School Program Act under the Constitution of Texas.

On trial before the court without a jury, judgment was rendered that appellants take nothing.

The appeal is before this Court on fourteen points, and are that it was error for the court to conclude that the appropriation is specific and constitutional, and in holding that the economic index was not arbitrary, and further in not holding the Act unconstitutional because no provision for notice and hearing to individual taxpayers, and contains no plain levy. That it was error for the court to hold the Act constitutional for the reason that it compels the school districts to levy the amount assigned to them, and that such levy is not in proportion to economic activity; and in finding that the Commissioner used information contained in the most recently available publications in computing the index. That it was error for the court to hold that the Substantial Evidence Rule applies. That it was error for the court in concluding that the Commissioner and the Board could use the figures in the latest publication, knowing that they were not correct as to property value in computing the index; and that it was error for the court to conclude that the Commissioner, with the approval of the Board, was bound to take only the figures in the latest publication in determining whether to adjust the index after it was adopted and in further concluding that if an adjustment of a county's index is made, the entire economic index for all counties must be adjusted so that the total index equals 100% of $45,000,000.

This case involves a construction of Article VI of Senate Bill 116, Acts 51st Leg., R. S.1949, ch. 334, p. 625, which has been codified as Article 2922–16, Vernon's Civil Statutes. This is the portion of the Gilmer-Aikin Bills which is responsible for the entire financing of the Foundation School Program.

The Gilmer-Aikin legislation is too long to even incorporate a substantial portion thereof herein without unduly lengthening this opinion and we shall quote only such parts as may be essential for an understanding of such to the end that we may orderly determine this case.

Art. 2922–16, V.A.C.S., Finances, reads in part as follows:

"Section 1. The Foundation School Program established in this Act shall be financed by:

"a. An equalized local school district effort to the extent hereinafter provided toward the support of this program;

"b. Distribution of the State and County Available School Funds on the basis of the number of scholastics; and

"c. Allocation to each local district a sum of State money appropriated for the purposes of this Act sufficient to finance the remaining costs of the Foundation School Program in that district computed and determined in accordance with the provisions of this Act.

"Sec. 2. The sum of the amounts to be charged annually against the local school districts of the State toward such Foundation School Program shall be Forty-five Million ($45,000,000.00) Dollars. The State Commissioner of Education, subject to the approval of the State Board of Education, shall assign each school district according to its taxpaying ability its proportionate part of such Forty-five Million ($45,000,000.00) Dollars to be raised locally and applied towards the financing of its minimum foundation school program.

"Sec. 3. In determining the taxpaying ability of each school district, the State Commissioner of Education, sub-

ject to the approval of the State Board of Education, shall calculate an economic index of the financial ability of each county to support the Foundation School Program. The economic index of a county shall be calculated to approximate the percent of the total taxpaying ability in the State which is in a given county, and shall constitute for the purpose of this Act a measure of one county's ability to support schools in relation to the ability of other counties in the State. The economic index for each county shall be based upon and determined by the following weighted factors:

"a. Assessed valuation of the county—weighted by twenty (20);

"b. Scholastic population of the county—weighted by eight (8);

"c. Income for the county as measured by: Value added by manufacture, value of minerals produced, value of agricultural products, payrolls for retail establishments, payrolls for wholesale establishments, payrolls for service establishments weighted collectively by seventy-two (72).

"The economic index determined for each county for the purposes of this Act shall be used for a period of four (4) years, beginning with the 1951-52 school year, and the State Commissioner of Education, subject to the approval of the State Board of Education, shall recompute a new such economic index each four (4) years, taking such information from the most recently available official publications and reports of agencies of the State of Texas or the Federal Government. Provided that should there be a sudden marked decline in the economic activity in a county, an adjustment of the county's economic index may be made by the State Commissioner of Education, subject to the approval of the State Board of Education.

"Provided, however, that for the school years 1949–1950 and 1950–1951, the economic index for each county shall be as follows:

" * * * Cameron, .727%; * * * Hidalgo, .973%; * * *."

The plaintiffs alleged that a freeze in the latter part of January, 1951, constituted a sudden marked decline in the economic activity of the counties of Cameron and Hidalgo, and required an adjustment of the economic indexes of said counties to be made by the Commissioner with the approval of the Board.

Plaintiffs further alleged that although the economic conditions of said counties were brought to the attention of the Commissioner and the Board, the Commissioner and Board refused to make an adjustment of the indexes of said two counties, and that such action was arbitrary and contrary to law and to the injury of plaintiffs. Further pleadings were made that the Act was unconstitutional.

The Tenth Point made by appellants is that the Substantial Evidence Rule is not applicable in this case.

This appeal is taken under Article 2922-19, V.A.C.S., which provides:

"Any person, county or school district aggrieved by any action of the Central Education Agency may appeal to a court of competent jurisdiction in Travis County, Texas. Such appeals shall be taken by serving the Commissioner of Education with citation duly issued by the Clerk of the Court, and the same shall be served in the manner provided by law in the service of citations in suits of a civil nature, and at the expiration of twenty (20) days after the service of said citation, the said cause shall thereupon stand for trial, and such trial shall include a determination of all issues, both law and fact. Such notice of appeal, or citation, shall state the action from which the appeal is taken, and if the appeal is from an order of the Board, stating such order or the part thereof from which the appeal is taken. * * *"

The appeal is from an order of an administrative agency (the appellees herein) exercising delegated legislative functions, and we believe that the Substantial Evidence Rule is applicable and that the

plaintiffs (appellants) assumed the burden of satisfying the court that the administrative decision was illegal, arbitrary, or capricious; that is, that such order was not reasonably supported by substantial evidence. Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks, Tex.Sup., 242 S.W.2d 181, 27 A.L.R. 2d 965; Board of Water Engineers v. Colorado River Municipal Water District, Tex. Sup., 254 S.W.2d 369.

The trial court filed findings of fact and conclusions of law, from which we embody parts thereof:

## "I.

"The Economic Index for all the counties of the State of Texas, including Cameron and Hidalgo Counties, for the four-year period beginning with the school year 1951–52, which was approved by the State Board of Education on March 5, 1951, was based upon the factors enumerated in Section 3 of Article VI of Senate Bill 116, Acts 51st Leg., R.S.1949, ch. 334, p. 625 (Sec. 3 of Art. 2922–16, V.C.S.), and in computing this index the Commissioner of Education in each and every instance used the information contained in the most recently available publications and reports of the State of Texas and the Federal Government as required by Section 3 of Senate Bill 116, supra.

## "II.

"The evidence adduced on the trial of this cause relative to the factors enumerated in Section 3 of Article VI of Senate Bill 116, supra, from the sources enumerated in Section 3 of Article VI of Senate Bill 116, supra, failed to show a sudden marked decline in the economic activity in Cameron County or in Hidalgo County during either of the following periods: (a) from the time of computation of the economic index approved and adopted by the State Board of Education on March 5, 1951 to March 5, 1951; (b) from the time of computation of the economic index approved and adopted by the State Board of Education of March 5, 1951, to August 22, 1951; (c) from the time of computation of the economic index approved and adopted by the State Board of Education on March 5, 1951, to the time of the conclusion of this case by the entry of judgment herein.

\* \* \* \* \* \*

## "IV.

"The Economic Index for Cameron and Hidalgo Counties, if recomputed on March 5, 1951, on August 22, 1951, or at the time of the entry of judgment in this case on the basis of the most recently available information from the sources enumerated in Section 3, of Article VI of Senate Bill 116, supra, on those respective dates, would have been as high as or higher than the Index for those counties which was computed by the State Commissioner of Education and approved and adopted by the State Board of Education on March 5, 1951.

## "V.

"The Economic Index for Cameron and Hidalgo Counties, if computed as of March 5, 1951, or August 22, 1951, on the basis of information now available from the sources enumerated in Section 3 of Article VI of Senate Bill 116, supra, would have been as high as or higher than the Index which was computed by the State Commissioner of Education and adopted and approved by the State Board of Education on March 5, 1951.

## "VI.

"The State Commissioner of Education and the State Board of Education afforded to the plaintiffs an adequate hearing on their request for an adjustment in the Economic Index assigned to Cameron and Hidalgo Counties for the four-year period beginning with the school year 1951–52.

\* \* \* \* \* \*

## "VIII.

"The latest information on scholastic population from the most recently available official publications and reports of the agencies of the State of Texas and the Federal Government on August 22, 1951, and on the date of the

entry of final judgment in this cause was the same as that used by the State Commissioner of Education in computing the Economic Index which was adopted and approved by the State Board of Education on March 5, 1951.

\*    \*    \*    \*    \*    \*

### "XI.

"The latest information from the most recently available official publications and reports of agencies of the State of Texas or the Federal Government on August 22, 1951, and on the date of the entry of final judgment in this cause on the value added by agricultural products produced as provided by the factors set out in Section 3 of Article VI of Senate Bill 116, supra, as of March 5, 1951, and as of August 22, 1951, was the same as that used by the State Commissioner of Education in computing the Index approved and adopted by the State Board of Education on March 5, 1951.

"The latest information which was available from the above sources on the date of the entry of final judgment in this cause on the value of agricultural products as of August 22, 1951, and as of the date of the entry of said final judgment, show a higher value than that used by the State Commissioner of Education in computing the Index approved and adopted by the State Board of Education on March 5, 1951.

\*    \*    \*    \*    \*    \*

### "XIII.

"Since the effective date of the Minimum Foundation School Program Act, each and every of the plaintiff school districts has applied for and received benefits under the provisions of the Minimum Foundation School Program Act, Senate Bill 116, supra (Arts. 2922-11 to 2922-22, V.C.S.).

### "XIV.

"For the fiscal year ending August 31, 1951, funds sufficient to operate the Minimum Foundation School Program

as provided for in Senate Bill 116, supra (Arts. 2922-11 to 2922-22, V.C.S.), were secured from the taxes levied under House Bill 8, Acts 47th Leg., R.S. 1941, ch. 188, p. 267, as amended, and funds withdrawn from the General Revenue Fund under the General Appropriation Bill for the operation of said program, but all funds which were expended from the General Revenue Fund under the Appropriation Bill for the operation of said program have been repaid to that fund from taxes levied under House Bill 8, supra. The evidence adduced at the trial indicates that during the fiscal year ending August 31, 1952, funds to operate the Minimum Foundation School Program as provided for in Senate Bill 116, supra, will be secured from the taxes levied under House Bill 8, supra, and allocated to the Minimum Foundation School Program by said statute as amended, and from the General Revenue Fund under the General Appropriation Bill for the operation of said program, and all funds which have been or will be expended from the General Revenue Fund under the appropriation contained in the General Appropriation Bill will be repaid to that fund out of taxes levied under House Bill 8, supra."

The court in paragraphs omitted by us of its findings, found:

That the freeze was disastrous to the citrus industry including the canning and packing thereof, alone.

That the assessed valuation in the two counties was higher than that used by the Commissioner.

That the latest information on scholastic population on August 22, 1951, was the same as that used by the Commissioner on March 5, 1951.

That the latest information showed that the value added by manufacture and minerals and payrolls as provided for in section 3 of Article VI of Senate Bill 116 as of March 5, 1951, and August 22, 1951, were the same as used by the Commissioner in computing the index.

The court concluded as a matter of law that notice to the various counties and districts or individuals was not required to be given by either the Commissioner or the Board:

"II.

"The functions and the duties of the State Commissioner of Education and the State Board of Education in computing and adopting a new Economic Index for the four-year period beginning with the school year 1951–52, as set out in Section 3 of Article VI of Senate Bill 116, supra, are administrative and legislative in nature and the preparation and adoption of the Economic Index for the entire State as adopted by the State Board of Education on March 5, 1951, was the performance of an administrative function delegated to the State Commissioner of Education and the State Board of Education by the Legislature and involved no discretion on this part of either the State Commissioner of Education or the State Board of Education. The action of the State Commissioner of Education and the State Board of Education relative to these administrative and legislative functions is subject to judicial review only where there has been a failure to follow the statutory formula prescribed by the Legislature in Section 3 of Article VI of Senate Bill 116, supra.

"III.

"In the preparation of the Index which was adopted by the State Board of Education on March 5, 1951, the State Commissioner of Education complied in each and every detail with the formula set out in Section 3 of Article VI of Senate Bill 116, supra, and therefore the Economic Index, as so prepared and adopted, is in compliance with the statute, and valid.

"IV.

"The portion of Section 3 of Article VI of Senate Bill 116, supra, which provides: 'Provided that should there be a sudden marked decline in the economic activity in a county, an adjustment of the county's economic index may be made by the State Commissioner of Education, subject to the approval of the State Board of Education.' prescribes for the State Commissioner of Education and the State Board of Education a function which is administrative and legislative in nature and subject to judicial review only where there has been a failure to follow the statutory formula prescribed by the Legislature in Section 3 of Article VI of Senate Bill 116, supra.

"V.

"The jurisdiction of the Court to review the action of the Commissioner of Education and the State Board of Education in this case was confined to a determination of whether or not the Board in adopting the Economic Index adhered to the formula prescribed in Section 3 of Article VI of Senate Bill 116, supra.

\* \* \* \* \* \*

"VIII.

"If the action of the State Board of Education in approving and adopting the economic index prepared by the State Commissioner of Education at its meeting of March 5, 1951, and the action of the Board on August 22, 1951, in refusing to withdraw its order of March 5, 1951, and in refusing to recompute a new Index (is) reviewable, the validity of the action of the State Board of Education must be sustained if there is substantial evidence to support that order or orders.

"IX.

"On the basis of the evidence adduced at the trial of this cause the action of the State Board of Education on March 5, 1951, in approving the Economic Index for the Counties in this State, is supported by substantial evidence.

\* \* \* \* \* \*

"XI.

"The Minimum Foundation School Program Act (Senate Bill 116, supra,)

and the appropriations which are made to finance the State's part of the Minimum Foundation School Programs in the school districts of the State, are constitutional as against each and every ground of unconstitutionality alleged by the plaintiffs in their original petition.

"Plaintiffs excepted to each of the findings of fact and each of the conclusions of law.

"Defendants excepted to Finding of Fact No. III and Conclusion of Law No. V."

The appropriation reads as follows:

"(32) All moneys allocated to the Foundation School Fund by Senate Bill No. 117, Acts of the Regular Session of the Fifty-first Legislature, 1949, are hereby appropriated to pay the State's part of the financing of the Foundation School Program as provided for in Senate Bill No. 116, Acts of the Regular Session of the Fifty-first Legislature, 1949, and any balance remaining in the Foundation School Fund at the end of each fiscal year is hereby appropriated for the same purpose.

"(33) There is hereby specifically appropriated out of any moneys in the General Revenue Fund not otherwise appropriated, the amount necessary for each month if on a monthly basis, or each year if on a yearly basis, of the biennium ending August 31, 1953, to pay the full amounts contemplated and provided by Senate Bill No. 117, Acts of the Fifty-first Legislature, Regular Session, 1949 * * * and by Senate Bill No. 287, Acts of the Fifty-first Legislature, Regular Session, 1949 * * * should there be insufficient money in the respective Funds created by said Senate Bill No. 117 and said Senate Bill No. 287 to carry out in full the purposes and provisions of said Senate Bill No. 117 and said Senate Bill No. 287. The above appropriations shall be expended under the terms and provisions of said Senate Bill No. 117 and the said Senate Bill

No. 287 and by the same officers named therein respectively." Acts 52d Legislature, Regular Sess., 1951, Chap. 499, p. 1443.

The "allocations" of Senate Bill No. 117, referred to in Section (32) above, reads as follows:

"* * * beginning with the fiscal year, September 1, 1949, and annually thereafter, there is hereby appropriated, allocated, transferred and credited to a special fund to be known as the Foundation School Fund, such an amount as is determined by the Foundation School Fund Budget Committee, which is hereby created. The membership of said Committee shall be composed of the State Commissioner of Education, State Auditor and State Comptroller of Public Accounts.

"On or before the first day of November, next preceding each Regular Session of the Legislature, said Committee shall determine and certify to the State Comptroller of Public Accounts the calculated amount to be placed in the Foundation School Fund for the ensuing biennium for the purpose of financing a foundation school program as defined in the Foundation School Program Act, * * *.

"Said Foundation School Fund Budget Committee is authorized to modify from time to time during the biennium, the estimate of the funds required for the Foundation School Fund, and in the light of any revised estimate or estimates made by said Committee during the biennium, the State Comptroller shall increase, diminish or suspend the further payment or payments from the Clearance Fund to the Foundation School Fund, provided that, by the close of each fiscal year there shall have been paid from the Clearance Fund to the Foundation School Fund such an amount as may be needed to pay all approved grants in full. Warrants for all money expended from the Foundation School Fund shall be approved by the State Commissioner of Education and transmitted by him to the treasurers of depositories of school

districts to which grants are made in the same manner as warrants for state apportionment are now transmitted. * * *" Acts of the Fifty-first Legislature, Regular Session, Chap. 335, Vernon's Ann.Civ.St. art. 7083a, § 4-a.

The "Clearance Fund" referred to above, is the well-named Omnibus Bill.

It comprises the following taxes: Occupation, Gas Production, Motor Vehicle Retail Tax, etc.

Appellants' points Nos. 1 through 7 are directed to the failure of the court to find the Act unconstitutional. The appellees take the position that appellants are not in a position to question the constitutionality of the Act on the appropriation for the support of the program.

We believe that the Act is constitutional and that the economic index is not an arbitrary basis of distribution of school funds, and it was not necessary to provide for notice and hearing to the individual taxpayers, and is not ambiguous and does not compel the school districts, to levy upon property owners an amount assigned to them by the Commission and Board, not in proportion to value.

■ This is a statutory appeal from the action of the State Board of Education in adopting the economic indexes for the counties of the State on March 5, 1951, and in refusing to set aside the indexes for Cameron and Hidalgo Counties on August 22, 1951. The parties include school districts located in Cameron and Hidalgo Counties and various individual taxpayers residing in these counties.

After adoption of the indexes on March 5, 1951, the State Board of Education was requested to set aside the portion of its order fixing the index for Cameron and Hidalgo Counties and to fix a new adjusted index on the ground that there had been a marked decline in the economic activity in these two counties as a result of a freeze which occurred in January, 1951. No question of unconstitutionality of the Foundation School Program Act or of the appropriation made by the 52nd Legislature was presented to the State Board of Education.

Since the plaintiffs alleged the unconstitutionality of the appropriation and of the Foundation School Program as an alternative ground for relief, conditioned upon the court's finding that they were not entitled to have the economic index set aside they are in the position of both relying upon the statute and assailing it at the same time which they cannot do. Becton v. Dublin, Tex.Civ.App., 163 S.W.2d 907, error ref., and cases therein cited.

The appellants have accepted benefits under the statutes. The trial court found that each of the school districts has applied for and received benefits under the provisions of the Act, under an appropriation similar to the current appropriation and are estopped to assert its invalidity. English Freight Co. v. Knox, Tex.Civ. App., 180 S.W.2d 633, error ref.; Hickson v. City of Van Alstyne, Tex.Civ.App., 195 S.W.2d 571.

Having concluded that the Act is constitutional, we believe the appropriation to be specific within the meaning of the Constitution of Texas.

■ With respect to specificity of the appropriation, the allocation to the Foundation School Fund contained in Article 7083a, V.A.C.S., is comparable to the prior allocation from the Clearance Fund to the Available School Fund for the purpose of paying a $55 per capita apportionment on scholastics. Acts 50th Leg., 1947, ch. 110, p. 173, formerly codified as subsection (4-a), Art. 7083a. The appropriation which the Legislature made in 1949 for the support of the Foundation School Program was identical with the one made in 1951. Acts 51st Leg., R.S.1949, ch. 615, at page 1352.

In City of Beaumont v. Gulf States Utilities Co., Tex.Civ.App., 1942, 163 S.W.2d 426, 432 (error ref.), the Court held that the appropriation in the 1941 Omnibus Tax Law, Art. 7083a, was specific, as against a contention that it violated section 6, of Article VIII of the Vernon's Ann.St. Constitution.

The Foundation School Program Act provides in detail the amounts which each school district is entitled to receive on the

basis of existing facts during each school year. Neither the Commissioner nor the Board may reduce or increase these amounts or refuse their payment to eligible school districts. Their only authority is to ascertain facts and to approve the amounts on the basis of the number of teaching and professional units, the transportation allowance, and the operating allowance to which each district is entitled under the law. The direction in Article 7083a to the Foundation School Fund Budget Committee to modify the estimate of the funds required to finance the Foundation School Program, and to the Comptroller to 'increase, diminish or suspend' transfer of funds is not an authorization to vary the amount of the appropriation, but is merely to regulate the accounting between the Clearance Fund and the Foundation School Fund.

■ We believe that the economic index as determined in accordance with the formula set out in the Foundation School Program Act is a valid basis for distribution of State funds in aid of its school program.

In order to participate in the appropriation, school districts are required to contribute a share of the expense in proportion to their ability to raise these funds.

The Legislature decided upon a basis of an economic index based on certain factors reflecting economic activity, rather than on a single basis of assessed valuation, for determining the taxpaying ability of a school district. Harris County v. Hall, Tex.Civ. App., 56 S.W.2d 943 (error dism.).

In Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, our Supreme Court held that the Rural Aid Appropriation Act was valid. In this case the Court developed and determined constitutional provisions for support of public school systems, and what constitutes suitable provisions for maintenance was not denied or discrimination had against school districts, taxpayers or scholastics.

■ The Foundation School Program Act does not levy a tax and is not invalid for failure to provide for notice and hearing to individual taxpayers. Art. 2922–16, § 2.

The State Commissioner of Education assigns each school district its proportionate part of $45,000,000 to be raised locally. This amount is computed in the manner set out in the statute, by the computation of an economic index, which is assigned to each school district in the county. There is no provision that the amount must be raised, only that the computed amount of local funds are to be chartered to the school district. Nor is it compulsory for any school district to participate in the Foundation School Program; it may stay out.

Article 2784e, V.A.C.S., provides for levying taxes in school districts, and the amount assigned to a district to be raised through local taxation will never exceed the amount permitted by the taxing statute.

The Legislature fixed the index for 1951–1955 period as it did for the 1949–1951 period, and a hearing was not necessary.

■ The Board was not required, in the present case, to afford a hearing to each of the many affected school districts before it adopted the economic index which it had computed in accordance with the formula provided by the statute. English Freight Co. v. Knox, supra.

■ The Court found and we believe that the Commissioner of Education used the most recently available official publications in computing the economic index adopted by the Board on March 5, 1951.

Dr. John R. Stockton, a witness called by defendant, testified:

"Q. Dr. Stockton, are you familiar with the materials which were used in the preparation of the index which was adopted by the State Board of Education on March 5, 1951? A. Yes, I was.

"Q. How did you become familiar with those? A. I had numerous and various conferences with Mr. Hitt and various other members of the Central Education Agency discussing—since I apparently had worked on this original report and the law was very similar to that report, I was sort of, I guess, an advisor or something. I don't know what my official capacity was. I guess

it was more or less unofficial, but I was familiar with those things.

"Q. You were familiar with those things? A. Yes, sir.

"Q. Would you say based upon your knowledge and experience that these are the latest data which could be used considering the provisions of information allowed by the statute? A. Yes, so far as the statute is concerned, they used the most recent data that could be found. There was nothing else that they could do, so far as I could see.

\* \* \* \* \* \*

"Mr. Jacobson: Well, let me rephrase the question. I did not intend to do that—I did the same thing this morning. Dr. Stockton, based upon your knowledge and experience, was the information which was used in computing the index which was adopted on March 5, 1951, the latest material available from the sources set out in the statute? A. Yes, sir, it was."

Burt C. Blanton, a witness called by plaintiff, testified at length:

"Q. Would you say that the adjustment which was made by the Commissioner in computing this figure from the figures released by the Bureau of Business Research, that that was an adjustment made based upon the latest available information from the sources set out in the statute? A. Well, all of those years that you have quoted are the latest available, so far as I know."

The trial court held that the economic index adopted on March 5, 1951, had been computed in compliance with the statutes and was valid, which holding we believe is in accordance with the statutes set out in section 3 of Article 2922–16.

The purpose and motive of the adjustment provisions is to allow the computation of a new index which will more accurately reflect the economic activity at the time of the adjustment. The activity to be reflected is the composite activity of the entire community and not of any single part, all factors named in the formula must be considered in making an adjustment.

A decline in one industry may be offset by an increase in another industry, the decline in economic activity in a county means a decline in the over-all composite activity as determined by application of the whole formula.

The plaintiffs offered evidence tending to show a decline in current economic activity in the citrus industry alone, and the trial court so found.

The trial court found from the evidence as a whole from official sources that if the economic index for the two counties had been recomputed at any relevant time from information based on official sources it would have been as high as, or higher than the index adopted on March 5, 1951, and we believe this holding is correct.

We have given careful consideration to the cases cited by appellants as well as the observations set forth in the briefs, but we believe that the trial court's judgment was authorized under the evidence and justified in law.

The judgment of the trial court is affirmed.

Affirmed.