Harry WILSON, Appellant,

v.

BOARD OF EDUCATION OF the FORT WORTH INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 17532.

Court of Civil Appeals of Texas, Fort Worth.

June 14, 1974.

Rehearing Denied July 12, 1974.

Leo Patrick Ferris, Fort Worth, for appellant.

Morgan, Gambill & Owen, and Cecil A. Morgan, Fort Worth, for appellee, Fort Worth Independent School Dist.

John L. Hill, Atty. Gen. of Texas, and William C. Bednar, Jr., Asst. Atty. Gen., Austin, for appellees, State Bd. of Ed. and State Commissioner of Education.

## OPINION

MASSEY, Chief Justice.

The Board of Education of the Fort Worth Independent School District, following a hearing held at the instance of Harry Wilson, a distributive education teacher for the District, entered its order changing the status of the teaching contract with Wilson from a "continuing" contract to a "probationary" contract. The effect thereof, if accepted as final by Wilson, would be the ability thereafter for the District to discharge him without the character of procedure made necessary in the protection of a teacher's rights pursuant to a contract which is "continuing".

We affirm.

In the Handbook of Texas School Law, Fourth Edition, by J. C. Hinsley, there is on page 1471 an Appendix upon Procedures on Hearings and Appeals as adopted by the State Board of Education August 22, 1951, as amended November 12, 1951, March 3, 1958, and June 3, 1967. Under Article I, "Hearings", is to be found Sec. 107, prescribing in part, as follows: "The aggrieved party shall file a request in writing with the officer or board for such hearing, which shall identify the ruling, action, or failure to act complained of; . . . . ."

Next in order is Article II, "Appeals", reading in part as follows: " . . . After a hearing has been held on any matter as provided in Article I, and a decision has been rendered, any party to such hearing may appeal from such decision as follows: . . . 2. Applicable to all Independent School Districts with 500 or more scholastics, the proper route of appeal shall be: a. From a district board of trustees to the State Commissioner of Education. b. From the Commissioner of Education to the State Board of Education. c. From the State Board of Education to a court of competent jurisdiction. 3. (Appeals shall be taken) . . . c. From the decision of the State Board of Education appeals may be taken as provided in Article 2922–19, V.A.C.S."

All appellate steps were taken by Wilson, through all the prescribed administrative hearings and through the district court.

He failed to obtain what was desired—restoration of his contract as a "continuing" contract at every stage. It is from the judgment of the district court that he brought his appeal into this appellate court.

■ The appeal amounting to one from an order of an administrative agency exercising delegated legislative functions is governed by the Substantial Evidence Rule. Alton Ind. School Dist. v. Central Education Agency, 259 S.W.2d 737 (Austin Tex. Civ.App., 1953, no writ history).

■ The Substantial Evidence Rule, in its application to an appeal from an administrative agency and the ensuing trial in the district court, means a trial (in the district court) to determine only the issues of whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence. Fire Department of City v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664 (1949). The court should not set aside an order of the administrative agency unless its order is illegal, unreasonable or arbitrary; insofar as the fact findings upon which the order is based are concerned, the order is not to be deemed illegal, unreasonable, or arbitrary if it is reasonably supported by substantial evidence. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73 (1939).

■ In such a trial the question is one of law in that the determination is whether or not the action of the administrative agency is supported by substantial evidence, subject always to review by the appellate courts. In the trial before the (district) court there is not merely a review of the evidence before the administrative agency at the time its ruling was made, for the issue is not whether the administrative agency actually heard sufficient evidence but rather is whether there then existed sufficient facts which, if such had been presented to it, along with such facts as were presented to it, to have justified the entry of the order which was entered. Or, in other words, additional evidence could

be presented before the various administrative hearing bodies and before the trial court so long as such evidence bore upon factual matter in existence at the time the first administrative agency entered the order from which there was taken the first of the steps of appeal. Cook Drilling Co. v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035 (1942).

■ In the administrative hearings the rule against admissibility of hearsay evidence applies exactly in the same manner in the case of a trial before the court. Lewis v. Southmore Savings Association, 480 S.W.2d 180 (Tex.Sup., 1972). In a test of the admissibility of any particular evidence apparently subject to exclusion on that ground it would always be well to consider such in light of the discussion of the court in the Southmore case.

■ At the time of the trial before the (district) court it is almost a necessity that the court know the evidence before the administrative agency claimed to constitute "hearsay". It is entirely proper that this be done at the trial court level so that the court is enabled to determine whether, aside from evidence improperly considered (or in any event heard) by the administrative agency, there was sufficient administrative evidence to support orders; whether—necessarily—the agency grounded its decision upon improper evidence; and—in light of the whole record—whether the circumstances rendered that decision one which was illegal, unreasonable or arbitrary.

■ On deciding a case where the Substantial Evidence Rule is to be applied the matter of preponderance of the greater weight of the evidence is even of no control so long as the order might be properly labeled as a "reasonable order" under all the circumstances in the evidence. Southern Canal Co. v. State Board of Water Eng., 159 Tex. 227, 318 S.W.2d 619 (1958).

As applied to the instant case there seems to have been supplied additional and

supplemental evidence at every hearing stage, including that presented upon trial before the district court, bearing upon facts which were at least existent (presumably possible to have been adduced) at the material antecedent time. Insofar as the immediate case was concerned in the trial court the "material antecedent time" would have been the time of the initial administrative decision by reason of which there was an appeal taken.

■ At the outset we will observe that the record reflects that there was substantial evidence to support the administrative order appealed from. Possible fact findings upon which the order might have been based would not have been illegal, unreasonable, or arbitrary. Relative thereto a question is raised on appeal as to what was factually found by the appropriate agency.

Specifically, Wilson's complaint is that the State Board made no Findings of Fact and Conclusions of Law. Actually what the State Board did, at a meeting held November 10, 1973, was to consider the record made before the State Commissioner of Education (at a hearing held August 30, 1973) and argument presented in behalf of both Mr. Wilson and the Fort Worth District Board, and to "sustain the decision of the Commissioner of Education".

The decision of the Commissioner of Education, made September 14, 1973, was to sustain the action of the Fort Worth District Board in its decision to return Mr. Wilson to probationary contract status with such district. As reflected in the decision of the Commissioner the findings of the District Board was "(1) On a number of occasions, Mr. Wilson absented himself from the boundaries of the Fort Worth Independent School District during school hours in violation of the district's Administrative Policy Sections 4.10a and 4.11a(1) and (2); and (2) Mr. Wilson was guilty of repeated failure to comply with official directives and established school policy, and inefficiency in the performance of duties, all of which were prescribed as lawful

cause for discharge in Code Sections 13.-109(4) and 13.110(1)." By reference to the instrument labeled Board's Findings and Conclusions, by the District Board, it is to be observed that its findings were considerably more extensive than the included findings therein to which the Commissioner of Education made reference. In any event it was made plain that the Commissioner's finding was that of Wilson's guilt in the particulars specified.

■ There is nothing in the law which prescribes that any of the administrative boards was obliged to recite in any order any finding, or to make any findings apart therefrom to justify its action, such as lawyers familiarly term Findings of Fact and Conclusions of Law. Even the decree or order need not contain the elements of a judgment in a court of law; it is only necessary that such minutes be sufficiently clear to disclose the intention of the board. Gragg v. Hill, 58 S.W.2d 150 (Waco Tex.Civ.App., 1933, error refused). Therefore there would not be presented error by the complaint of absence of findings of this character, in or out of the order of the State Board, if in fact they were not made. (However, they were made as noticed.) Furthermore there was no request by Wilson that they be made. It is of interest to notice that upon the appeal taken from the judgment of the district court to this appellate court there was no request for Findings of Fact and Conclusions of Law; none were requested and none were filed and there is no complaint by Wilson because of their absence.

■ A complaint by Wilson was that upon the hearing before the State Board (the record was made by the hearing before the Commissioner) he was not permitted to present evidence of his union activities as a reason (1) for the charges having been filed against him and (2) to show bias of witnesses against him. The complaint must be overruled for the record does not reflect what it would have consisted had it been permitted, by way of its introduction at any stage of the proceed-

ings to make a bill of exceptions because of its exclusion. A bill of exceptions was made, but thereby nothing was proffered to show that Wilson's union activities constituted a reason for charges having been filed or that any witness was biased against him because of the activities.

The complaint upon the admissibility of hearsay evidence is that to which Wilson devotes a major portion of his brief, and it is obvious that there was a great deal of prejudicial hearsay testimony at every hearing stage, even in the trial court. Of particular importance was the evidence the State Board had before it that amounted to "hearsay". On the propriety that the trial court hear it, i. e. hear that of which it consisted, we have already written. Appellate courts routinely make the test of evidence contended to amount to "hearsay", and there would be only a minimal distinction to be made in the case of appeal of an administrative order to the trial court. Before the trial court, of course, it is relatively common to admit everything where there is no jury; with the court trusted to sever "hearsay" from the testimony which is proper to be considered, and then to make the decision upon that which amounts to proper evidence.

However, as applied to propriety for the State Board (and the agencies considering the case administratively before it reached the State Board) Wilson contends that a similar rule should not apply. In other words his contention is that such an agency, not so well versed as a trial court and hence not able to intelligently sever out the hearsay, must be treated as having been thereby influenced—and in this case prejudiced against Wilson because of its tenor —so that the findings and conclusions upon which the administrative decision was rendered were thereby tainted.

In light of the state of the record made of the hearings we are well able to understand Wilson's contention. The record reflects that because of Wilson's action set forth in the Commissioner's findings, treat-

ed as adopted by the State Board (having occurred before the District Superintendent of the Fort Worth Independent School District had any thought of discharging him), the Superintendent became prejudiced against him. Furthermore, at every hearing stage, because of Wilson's actions and statements and because of facts developed revealing (to some extent by "hearsay") even more reprehensible conduct on his part, the Superintendent's prejudice was surely increased. In the record made of the hearing before the State Commissioner it was made clear that the Superintendent considered Wilson a liar, that he had told Wilson so, and had furthermore stated to Wilson that he knew that he had lied under oath at the hearing before the District Board.

Despite the fact that the evidence before the Commissioner (and State Board) was such that there could have been discharge of Wilson rather than to affirm the decision of the District Board to place him on "probationary" status, the ultimate decision was to make such affirmance.

As applied to the "hearsay" above noticed there was admissibility for some purposes; for example the testimony of the witness McAbee would not be condemnable had it merely shown that in the discharge of his duties he sought to confirm Wilson's reports of the work activity of certain students by interviewing the employers, parents, and students themselves to check the accuracy of the reports but was unable to make the confirmation despite the interviews. By remark of the Commissioner, to be observed in the Statement of Facts, he obviously recognized the foregoing.

 However, all this is beside the point. An administrative board should not be confined to the niceties of a trial before the district court. Where there is appeal from an administrative order into the courts and there is to be a test thereof under the Substantial Evidence Rule there should not be reversal merely because the administrative board had admitted improp-

er "hearsay". Where hearsay evidence has been received by the board it is the duty of the trial court, upon such appeal, to "test" the whole of the evidence, proper and improper, before the board in the decision upon the degree of prejudice, if any, occasioned by the inadmissible evidence in an ultimate determination of whether a legal administrative order was unreasonable or arbitrary.

Our decision here, upon the same record as before the trial court, is that presence of the hearsay evidence in the record made before the State Board of Education and upon which its administrative order was made did not in this case make the order one which was arbitrary or capricious. That was the decision likewise made by the trial court and thus our holding is that it is correct. The ruling of the State Board of Education was supported by substantial evidence, and, under the Substantial Evidence Rule, it is to be upheld.

Judgment is affirmed.